[L. A. No. 921. Department Two.—December 23, 1901.]

## JAMES ROBERTS, Respondent, v. JOHN BURR, Appellant.

FRAUD AS TO CREDITORS—PREFERENCE OF CREDITOR—TRANSFER OF PROPERTY TO PAY DEBT.—As between creditors not claiming under the Insolvency Act, in the absence of actual fraud, a debtor may prefer one creditor, by transfer of property to pay the debt, and the contract will be valid as against all other creditors who had acquired no lien upon the property so transferred.

ID.—MISREPRESENTATION BY DEBTOR—INNOCENCE OF CREDITOR.—The fact that one of the debtors made false and inconsistent statements as to the financial standing of a firm of which he was a member, which was unable to meet its obligations, at the time of the transfer of property, to pay a creditor of the firm, cannot affect the preferred creditor, who had no knowledge on the subject of their financial standing, and was not shown to have had any knowledge of or participation in the misrepresentations made.

ID.—BURDEN OF PROOF—FRAUD OF DEBTOR—VALUABLE CONSIDERATION—KNOWLEDGE OF FRAUD.—The burden is upon one who assails a transfer as fraudulent against creditors to prove the fraudulent intent of the vendor, and the burden is then upon the transferee to show a valuable consideration, whereupon the burden again shifts to the assailing party to prove the transferee's knowledge of the fraudulent intent of the debtor.

ID.—SUSPICION AS TO GOOD FAITH OF PREFERRED CREDITOR—PRESUMPTION—PROOF REQUIRED.—It is not enough that the circumstances tend to raise a suspicion as to the good faith of the preferred creditor. The presumption of law is in favor of the fair dealing of the parties; and the evidence of the facts and circumstances, taken together, must amount to proof of fraud, and not to a mere suspicion thereof.

ID.—REPLEVIN—VALUE OF PROPERTY—SUPPORT OF FINDING—CONFLICTING EVIDENCE.—In an action of replevin, brought by a bailee of the property transferred to the creditor, against a sheriff who had levied upon the property, under execution against the debtor firm, where the court found the value of the property, as alleged by the plaintiff, upon evidence for the plaintiff, sufficient to support the finding, the fact that the evidence for the defendant conflicts therewith will not justify the appellate court in disturbing the finding.

ID.—RECOVERY BY BAILEE—DEPOSIT FOR SALE UPON COMMISSION—SPECIAL OWNERSHIP—RIGHT OF POSSESSION.—The special ownership and right of possession of a bailee or depositary for sale upon commission, to whom the preferred creditor of the debtor firm had de-

livered the property transferred to pay the debt, is sufficient to support a recovery of such property by the bailee, and proof of general ownership in the plaintiff is not required.

ID.—OMISSION IN FINDINGS—FACTS ADMITTED.—Where the defendant sheriff admitted the taking and carrying away of the property, and sought to justify the taking, an omission by the court specially to find upon the facts so admitted is not material, and the court was not required to find thereupon.

APPEAL from a judgment of the Superior Court of the County of Los Angeles and from an order denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion.

L. H. Valentine, for Appellant.

Brown & Newby, for Respondent.

CHIPMAN, C.—The action is for the recovery of the possession or value of certain jewelry, precious and semi-precious and imitation stones, described in the complaint, the property of Emily A. Lucas, by her intrusted to plaintiff for sale on commission. Defendant, as sheriff, claims possession by virtue of a writ of attachment levied at the suit of one Trafton against S. E. Lucas and James H. Lucas, partners, as S. E. Lucas & Son. Defendant also alleged, in an amended answer, that the said S. E. Lucas & Son conveyed the property to Mrs. Lucas (the wife of S. E., and mother of James), for the purpose of defrauding their creditors and preventing the collection of their just obligations. The case was here once before, and at that time presented only the question as to whether there had been such delivery of possession as would satisfy the statute, and the judgment in favor of defendant was reversed. (*Roberts* v. *Burr,* 54 Pac. Rep. 849, not officially reported.) At the second trial defendant amended his answer by alleging actual fraud, as above stated. Plaintiff had judgment, from which and from the order denying his motion for a new trial defendant appeals.

Defendant now contends that the evidence is insufficient to justify finding VI, that the transfer to Emily A. Lucas by S. E. Lucas & Son was not made with intent to hinder, delay, or defraud the creditors of S. E. Lucas & Son, and finding

IX, that the value of the personal property seized was, and now is, three thousand dollars.

1. The facts as to the loan of money by Mrs. Lucas to the firm, the transfer of the property to her, the placing of the property with plaintiff for sale, and all the circumstances attending the transaction appear fully in the transcript, and are much the same as at the former trial. There is evidence sufficient to support the findings, that the property was transferred for a valuable consideration, and that the transfer was accompanied by an immediate delivery, followed by actual and continued change of possession. But it is urged that the property was conveyed for the purpose of defrauding creditors; i. e. that the evidence shows actual fraud. "A debtor may pay one creditor in preference to another. . . . " (Civ. Code, sec. 3432); and, "in the absence of fraud [i. e. actual fraud, not what may be declared by the Insolvent Act to be fraudulent], every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract." (Civ. Code, sec. 3431.)

Chief Justice Marshall said in *Brashear* v. *West*, 7 Pet. 608, cited approvingly *In the Matter of Muller & Kennedy*, 118 Cal. 432: "It is an absurdity to say that a conveyance of property which pays one creditor a just debt *and nothing more*, is fraudulent as against other creditors of the common debtor. In a fair race for preference, if a creditor by diligence secures an advantage it may be maintained; but if his purpose is not to collect the claim, but to help the debtor cover up his property, he cannot shield himself by showing that his debt was *bona fide*."

Among the circumstances marshaled by appellant as being badges or evidence of fraud are the following: 1. That the firm was unable to meet its obligations at the time of the transfer; 2. False and inconsistent statements of S. E. Lucas to a mercantile agency and to certain creditors; 3. Unaccounted-for shrinkage in the merchandise stock of the firm. Without repeating the evidence on these points, there was nothing to show that Mrs. Lucas knew the financial situation of the firm. She testified she had no knowledge on that subject. Nor is there any evidence tending to show that she knew of any misrepresentations being made by the firm to creditors

or others, or that she had any knowledge of the extent of the firm's indebtedness; nor is there any evidence that she had knowledge that the stock of goods had fallen in value below what the firm had represented to creditors they had on their shelves. It may be admitted that the firm was misrepresenting its condition, but that is not evidence affecting the honesty of purpose of Mrs. Lucas in collecting her claim, in the absence of any knowledge of or participation in the misrepresentations on her part. There was evidence from which the court could conclude that she was acting in good faith and without knowledge of any fraudulent intent of her vendors.

It was said in *Hart* v. *Church,* 126 Cal. 471:[1] "It is the well-settled rule, that where a plaintiff attacks a conveyance as in fraud of his rights, it is incumbent upon him first to show the fraudulent intent of the vendor. The burden then shifts to the purchaser to show a valuable consideration, and, this shown, the burden again shifts to the plaintiff, who must show the vendee's knowledge of the fraudulent intent of the vendor."

Appellant further urges the following circumstances as showing fraudulent intent of both vendors and vendee: 1. The peculiar and secret character of the alleged transfer to Mrs. Lucas; 2. That the transfer was out of the usual course of business; 3. That the peculiar circumstances under which plaintiff became the bailee of the property show the fraudulent intent of the Lucases. The evidence does not disclose anything very peculiar or remarkable in the sale, and S. E. Lucas testified that he made no secret of it, and that he told several persons about it, and, among them, one or more of his creditors. Mrs. Lucas testified that it was her money that was used in purchasing the firm's goods, and she explained fully how she came by the money; that she thought it was time they were making some settlement with her, and she herself proposed to take the goods in payment, which the evidence showed were not of a value equal to the debt paid with them. It appeared that there still remained in the store goods of the invoice value of $2,500. The purchase was made about August 2, 1895, and the firm continued in business until about September 2, 1895, when they sold the remaining stock to Lyons & Son, creditors of the firm. Mrs. Lucas took the goods she had purchased to

[1] 77 Am. St. Rep. 195.

her home; the facts are quite fully stated in the opinion in the former appeal. About November 10, 1895, plaintiff bought the showcases and fixtures from Lyons & Son, and started in business, and not long afterwards Mrs. Lucas made an arrangement with plaintiff to sell on commission the goods she had purchased from Lucas & Son, and about January 7, 1896, the defendant seized the goods, as sheriff, in the possession of plaintiff. This was six months after the purchase by Mrs. Lucas.

Appellant cites cases arising under the Insolvent Act, which expressly provides that if the transfer "is not made in the usual course of business of the debtor, that fact shall be *prima facie* evidence of fraud." But the fraud here referred to is fraud on the provisions of the Insolvent Act. (*Washburn* v. *Huntington,* 78 Cal. 573; so held, also, where the same provision is found in the National Bankrupt Act. See cases cited in *Washburn* v. *Huntington,* 78 Cal. 573.) The fraud mentioned in section 3439 of the Civil Code is not necessarily the fraud referred to in the Insolvent Act, for the latter act forbids preferences, while the Civil Code, as we have seen, expressly allows them. The transfers declared to be void by section 3439 are transfers made with intent to delay or defraud creditors, and the intent is to be found as a matter of fact. (*Salisbury* v. *Burr,* 114 Cal. 451.) The circumstances under which plaintiff took the goods on sale, together with other circumstances brought out, might tend to create a suspicion as to the good faith of Mrs. Lucas; but the law requires something more than suspicion on which to hang a charge of fraud. "The evidence of these matters, facts, and circumstances, taken together, must amount to proof of fraud, and not to a mere suspicion thereof, for the presumption of the law, except where confidential relations are involved, is always in favor of the fair dealing of the parties." (*Levy* v. *Scott,* 115 Cal. 39.) The testimony disclosed with fullness of detail the circumstances attending the sale and the subsequent conduct of the parties to it. The trial court was in a position to judge with safety the true inwardness of their intention. We cannot say from the evidence that the court erred in its findings.

2. It is contended that the finding of the value to be three thousand dollars is not sustained by the evidence. S. E. Lucas testified that he was in business as a jeweler and dealer

in precious stones, and had been for six years,—bought and sold "the class of goods that were attached in this case," and knew the value of such goods at that date; and he testified that the goods were worth in the open market the prices the firm had paid for them, which was the price at which Mrs. Lucas took them,—namely, $4,537. James Lucas, the son and partner of S. E., gave similar testimony, although he stated that the basis of his estimate of value of the merchandise was what they had paid for it at wholesale. To some extent, this testimony is corroborated by Mr. Lyons, who testified that he had been a dealer in such goods for forty or fifty years. There was evidence introduced by defendant tending to show that the goods were of less value than found by the court. We think, however, there was sufficient evidence to support the findings, and, at most, the evidence of defendant merely created a conflict on that point. It was for the lower court to determine the value, and we cannot, under the well-established rule, interfere with its conclusions.

3. It is contended that the court failed to find on certain material issues.

The court found that plaintiff was the special owner and entitled to the possession of the attached goods; that defendant wrongfully took them from plaintiff's possession, and still detains them after demand made for their return; that the goods were sold and delivered to Mrs. Lucas by Lucas & Son for a valuable consideration, and the transfer was not made with any intent to hinder, delay, or defraud their creditors, and was followed by an immediate delivery and continued and actual change of possession; that the property was deposited by Mrs. Lucas with plaintiff, "as bailee, or depositary, for sale upon commission, and said plaintiff held the goods in that capacity at the time of the seizure." The value was found to be three thousand dollars, and, as conclusions of law, it was found that plaintiff is entitled to recover the possession or the value.

The findings were sufficient to uphold the judgment. Plaintiff's right of possession was sufficient, without establishing general ownership in him; he had a special ownership in the goods, and he had possession, and this is ownership as against a wrong-doer. The taking and carrying away was not specially

found, and was not required, for defendant admitted and sought to justify the taking. The ultimate facts found, we think, fully met the facts alleged in defense, and specific findings on these facts were not necessary.

The essential and ultimate facts related to the fraud charged, and on these the findings were sufficient.

We can discover no error, and, therefore, advise that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Henshaw, J., McFarland, J., Temple, J.