[Civ. No. 10741. Second Appellate District, Division One.—July 8, 1936.]

In the Matter of the Estate of GEORGE H. ALLAN, Deceased. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Appellants, v. MAUD MARIE ALLAN, Respondent.

W. H. Douglass, Freston & Files and Ralph E. Lewis for Appellants.

LeCompte Davis, Alfred F. MacDonald and Gosling & Gosling for Respondent.

WHITE, J., *pro tem.*—This is an appeal from a judgment of the probate court, made after a contest involving two separate wills of the decedent, George H. Allan, and by which judgment probate was denied both wills and the deceased was declared to have died intestate.

The decedent, George H. Allan, died April 1, 1934, leaving no lineal heirs. Surviving him, however, were his widow, Maud Marie Allan; his brother, Charles E. Allan; a nephew, William B. Ittner, Jr., and two nieces, Gladys Ittner Orr and Helen Ittner Lorber. Under date of January 8, 1930, the decedent made a will in due form and attested by two witnesses, under which his wife was appointed executrix, and under which specific bequests of $2,000 each were given to his brother and the two nieces; the wife being the only other beneficiary, and being bequeathed specific real property, which will, in effect, except for such bequests, either made Maud Allan the sole beneficiary under the estate, which was of considerable extent, or left the deceased intestate as to much of the estate. Upon the death of the decedent, the widow, Maud Allan, presented the will of January 8, 1930, for probate.

The decedent, however, had executed under date of September 20, 1930, or approximately nine months after the execution of the will above mentioned, another will, in due form and attested by two witnesses, under which the Bank of Italy was named as trustee for the purposes therein set forth. To such trustee was devised all of decedent's property, with minor exceptions, with directions to pay fifty per cent of the net income, but not less than $3,000 per year, to his wife, Maud Allan, she to have the free use and occupancy of the home until her death. The balance of the income was to be paid in small amounts to nine named beneficiaries, including decedent's brother, nephew, and two nieces, with provision for termination of the trust upon the death of the wife, Maud Allan, and distribution at that time

of the *corpus* to six named beneficiaries. This will, by its terms, revoked all previous wills.

The last-named will, of September 20, 1930, was presented for probate by the Bank of America National Trust and Savings Association, as successor in interest to the Bank of Italy, and by the named beneficiaries other than Maud Allan, the widow.

The proponents of the last-made will presented objections to the probate of the earlier will, and Maud Allan, as proponent of the first-named will and chief beneficiary thereunder, filed objections to the probate of the last made will. By stipulation the two matters were combined for hearing. With the issues as thus framed, the court tried the matter and found that both wills were legally executed as to form, and that at the time of making each will the decedent was possessed of testamentary capacity, and that the contents of each of said wills were clearly and satisfactorily proven, each by the uncontradicted testimony of two credible witnesses; that the will executed by the decedent on the 20th day of September, 1930, contained a clause specifically revoking all former and previous wills executed by him. The court further found "that after the execution by the said George H. Allan of the will dated September 20th, 1930, the said testator, George H. Allan, with the full intent and purpose to revoke the same and to make all the provisions thereof null and void and of no effect, destroyed said will dated September 20th, 1930, and said will was not in existence at the time of the death of said George H. Allan".

Appellants assail the judgment herein on the sole ground that the last-named finding is not supported by the evidence, by reason of which the will of September 20, 1930, not having been otherwise revoked by the testator, should have been admitted to probate.

It would unduly prolong this opinion to set forth all of the testimony relied upon by appellants in support of their position. It is enough to say that the entire record, including the evidence, has been reviewed by us with care, and for the purpose of this decision we will epitomize the same. It appears that the deceased, George H. Allan, had been doing business under the fictitious name of West Coast Export & Commission Company. A safety deposit box had been maintained at the Security-First National Bank in

such fictitious name, to which for a long time only the deceased and his brother Charles had access. During the fall of 1933, decedent's health commenced to fail, and about November 1 he closed his office. At that time various papers belonging to the decedent were taken by him and his brother Charles and placed in the safety deposit box mentioned. The will of September 20, 1930, was included in the papers placed in the box. Among other papers kept in the box thereafter were numerous coupon mortgages and leases. The record indicates that after the will was placed in the box the decedent, George H. Allan, never entered the box, all business requiring entry to the box being conducted by his brother Charles, who had occasion to enter the box frequently. On January 4, 1934, decedent's wife, Maud Allan, was given the right to draw personally on decedent's checking account at the bank, and was likewise accorded the right of entry to the safety deposit box in question. On January 4, 1934, which was the same day decedent's wife was given access to the safety deposit box of her husband, she took out a box in her own name. Shortly after this, according to the testimony of Mrs. Maud Allan, her husband requested her to go to the joint box, get out everything except some big brown envelopes, which contained mortgages and similar papers, and to bring them home. This the wife did, she testifying at the trial that she did not know what papers she brought home from the joint box. About a week later, she testified, her husband gave her a parcel of papers and requested that she return those papers to the safety deposit box, which she did. She took back and placed in the box only the papers given her by the deceased, without checking or examining them. Mrs. Allan also testified that during the interim between the delivery of the papers by her to her husband and the return of the same at his direction to the safety deposit box, she noticed her husband burning some papers in the incinerator.

Thus we find, without conflict in the evidence, that on or about November, 1933, the will of September 20, 1930, was placed in the joint box; that thereafter George Allan personally had never opened the box, though his brother, Charles Allan, had occasion to enter the same thereafter. Charles Allan, however, testified that he had never removed the will from the box. On January 4, 1934, Mrs. Allan was

given access to the box. There is no testimony of anything whatever being removed from the box after the date when Mrs. Allan testified she returned the papers at the direction of her husband. Upon the death of George Allan, the box was examined and the will of September 20, 1930, was not contained therein, nor was a diligent search rewarded by finding it. The evidence clearly shows that prior to January 4, 1934, only decedent and his brother Charles had access to the box. It was stipulated that between October, 1933, and the date of his death, decedent never entered the safety deposit box at the bank. Between the dates of January 19 and January 26, 1934, during which Mrs. Allan removed and returned the papers to the safety deposit box, the record indicates that decedent's brother Charles entered the safety deposit box once. It is at once apparent that the will of September 20, 1930, was either abstracted from the box or was contained in the papers which Mrs. Allan, at the direction of her husband, removed from the safety deposit box and delivered to the latter. The trial court concluded that the latter was true, and that while the will was in his possession the decedent and maker thereof destroyed the same. If the court below was justified in concluding, and we believe it was, that the will in question was delivered to the decedent with the papers taken at his direction from the safety deposit box, then the presumption arises that the will, last being accounted for in the possession of the decedent, and not being found after his death, was destroyed by him with the intention of revoking it. (*Estate of Sweetman*, 185 Cal. 27 [195 Pac. 918]; 14 Ency. of Evidence, 440; *Matter of Cunnion*, 201 N. Y. 123 [94 N. E. 648, Ann. Cas. 1912A, 834]; *In re Keene's Estate*, 189 Mich. 97 [155 N. W. 514, Ann. Cas. 1918E, 367].) ▪ It is the settled rule in this jurisdiction that, where the evidence shows that the instrument cannot be found, and that when last seen or known to exist it was in the custody or possession of decedent, the conclusion of law is that the writing was destroyed by the decedent, and that he acted with the intention of effecting a revocation thereof. (*Estate of Smith*, 140 Cal. App. 508, 516 [35 Pac. (2d) 335].) To hold otherwise than it did, the trial court would have had to find that the will was surreptitiously and fraudulently removed from decedent's papers by either his wife or brother, and in our opinion,

there is no evidence upon which to predicate such a finding. From a consideration of the evidence in this case in the light most favorable to appellants, we fail to find sufficient evidence upon which to justify the finding of fraud that would necessarily be implied in a finding that the will was destroyed after the death of the deceased. ▮ The rules of evidence and the weight to be accorded the evidence are the same in this proceeding as in any other civil case. (*Estate of Caspar,* 172 Cal. 147 [155 Pac. 631].) The trial court is the exclusive judge of the weight to be given to the evidence; and it is also true that the presumption is in favor of honesty and fair dealing (*Estate of Sweetman, supra,* p. 28), and the burden is upon the party asserting the fraud to prove it by some substantial evidence. The facts and circumstances must be shown in evidence that give rise at least to a reasonable inference of fraud, and not a mere suspicion thereof. (*Roberts* v. *Burr,* 135 Cal. 156 [67 Pac. 46].) Indeed, it has been held that ''if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of court or jury to draw the inference favorable to fair dealing''. (*Ryder* v. *Bamberger,* 172 Cal. 791 [158 Pac. 753].) We find no facts or circumstances in the evidence here from which inferences of fraud on the part of those who had access to decedent's safety deposit box may reasonably be drawn.

The last-made will, of September 20, 1930, was less favorable to the wife, Mrs. Maud Allan, than was the first will, of January, 1930, and assuming that such a situation might warrant an inference that she destroyed the will less favorable to her, still it seems to us from the evidence in this case that the more sound and logical inference to be drawn was that during the final months of his life, when decedent was more or less helpless physically by reason of paralysis, and during which time his wife was extremely affectionate and kind to decedent, waiting upon and nursing him, and solicitous at all times for his well-being and comfort, that he determined upon giving her practically all of his estate, in conformity with the terms of the first will, and that thinking a destruction of the second will would revive the first, he took that course; because the evidence indicates that

on the day he asked Mrs. Allan to return the papers to the safety deposit box he delivered to her the first will, of January, 1930, and told her she had better place it in her own safety deposit box. There is abundant evidence in the record showing not only affectionate care and wifely devotion on the part of Mrs. Allan, but there is also evidence in the record indicating that during the final months of his life decedent recognized this devotion and declared that he had left his wife well taken care of, and upon one occasion he stated to a family friend, "I have left her everything I have and she has certainly earned it." Inferences, after all, are based, among other grounds, on propensities and passions of people, and where, as in a case like this, the evidence indicates that during the serious illness that marked the closing months of decedent's life, his wife took care of him, bathed him, put him to bed, got his meals, helped him around, and attended to his every want, we are of the opinion that the trial court was justified in concluding that natural human propensities would prompt a manifestation of gratitude on the part of the husband, to which he would give expression by destruction of the will less favorable to her, in the mistaken belief on his part that by so doing he reinstated the provisions of the original will, which he delivered to her when he directed her to return the papers to the safety deposit box, minus the later will of September 30th.

The record containing ample evidence to sustain and support the finding and judgment of the trial court, it is ordered that the same be, and it is hereby, affirmed.

York, Acting P. J., and Doran, J., concurred.