[Civ. No. 11459. First Dist., Div. One.—April 22, 1941.]

AMERICAN BOX & DRUM CO. (a Corporation), Appellant, v. HOWARD HARRON, Respondent.

Philip S. Ehrlich, Albert A. Axelrod and Julian R. Bauer for Appellant.

O'Connor, Neubarth & Moran and Louis Lamy for Respondent.

WARD, J.—This is an appeal by plaintiff from a judgment in favor of defendant in an action in which damages in the sum of $7,551.15 were sought. The complaint alleged that, as the result of a fraudulent scheme and plan on the part of defendant in connection with a creditor's claim filed by him as attorney for plaintiff against an estate, he omitted therefrom facts which if established would have estopped the executor to plead successfully the statute of frauds and the statute of limitations.

The American Box & Drum Co., hereinafter called the American Company, was organized prior to 1921 by George A. Racouillat, who until his death acted as its president, a director and general manager. Racouillat was also instrumental in organizing the California Novelty Wooden Box

Company, a corporation, hereinafter referred to as the Novelty Company. At the time of his death he owned approximately a one-third interest in each company. During the period from 1921 to and including 1930, he caused a number of loans to be made by plaintiff to the Novelty Company without, however, securing authorization therefor or ratification thereof by plaintiff. On July 31, 1933, the Novelty Company renewed a promissory note evidencing its indebtedness to plaintiff based upon such loans. Racouillat died November 30, 1935, at which time the obligation, exclusive of interest, amounted to the sum of $5,550. Upon liquidation of the affairs of the Novelty Company on October 24, 1936, $1704.32 was paid plaintiff as a final dividend.

Upon the death of Racouillat, Emil Nissen, an employee of plaintiff, became its president and manager. He was also, with Mrs. Racouillat, appointed one of the executors of Racouillat's estate. Defendant, as attorney, represented Racouillat personally during his lifetime, the American and Novelty Companies and the Racouillat estate. On behalf of the plaintiff corporation he filed a creditor's claim with Nissen, the executor of Racouillat's estate, covering the amount of the Novelty Company's indebtedness to it. Upon defendant's advice the claim was at first approved, and then rejected upon the grounds that it was barred by the statute of limitations and the statute of frauds. It appears that certain legatees of the estate had indicated approval of the claim but subsequently, upon the advice of other counsel, withdrew such approval.

Upon rejection of the claim defendant determined that it was to the best interests of all concerned that plaintiff company and the executor be represented by separate and independent counsel, and he suggested the names of attorneys to represent each. No claim is made and the record does not disclose any collusion between the attorneys selected. All of the information upon which the allegations of the complaint were based was supplied by defendant in a written statement of facts, and it was upon this statement that a complaint was filed upon the rejected claim. Defendant executor in that proceeding filed a demurrer in which he also set up that the cause was barred by the statute of frauds and the statute of limitations. The demurrer was sustained with-

out leave to amend. Judgment of dismissal was signed and filed and no appeal has been taken therefrom.

The trial court in the present proceeding found that a valid claim existed, but that "it is not true that said defendant believed at the time he gave such advice [to reject the claim] that a valid and enforceable claim existed in favor of plaintiff and against E. C. Nissen as executor of the Last Will and Testament of G. A. Racouillat, deceased".

 Up to this point no well grounded claim of fraud may be based upon defendant's actions as an attorney. Attorneys, like other agents, may represent conflicting interests. In the absence of litigation, existing or contemplated, an attorney is not precluded from representing adverse parties providing his employment is within the knowledge and with the consent of each and he deals fairly with both. (*Lessing* v. *Gibbons*, 6 Cal. App. (2d) 598 [45 Pac. (2d) 258]; 7 C. J. S. 826; 3 C. J. S. 17.) It is not suggested in the briefs that defendant's representation of the adverse interests was without the knowledge and consent of all persons interested in the estate and in the plaintiff corporation, including its stockholders. No contest was contemplated until certain legatees informally disapproved the payment of the claim filed by plaintiff.

In the present action it developed that during his operation of the American and Novelty Companies Racouillat, without corporate approval or ratification, "dipped" into the funds of one corporation for the benefit of the other, and that at various times his conduct indicated that he was personally responsible for such transfers. In that connection the court herein found "that the repayment of said loans to plaintiff was guaranteed by said G. A. Racouillat" and that the estate was estopped to plead the statute of frauds or the statute of limitations. For the purpose of this appeal we may assume, without deciding, that the trial court was correct.

 The contention of appellant is that respondent fraudulently concealed from the attorney representing it in the suit upon the rejected claim, facts which established a liability not barred by the statute of limitations nor unenforceable because not in writing. Actual fraud on the part of respondent is alleged; that he knew plaintiff had a valid claim and deliberately concealed vital facts; that the attorney for plaintiff

who brought suit on the rejected claim was "falsely and fraudulently directed . . . to draft said complaint so that it would show on its face that it was barred by the statute of frauds and the statute of limitations". There is no evidence in this case that anyone was "directed" to file a complaint based upon a rejected claim, showing upon its face that it was barred by the statute. Consideration may be confined to an uncontradicted verbal statement attributed to respondent claimed by appellant to be a deliberate misrepresentation of fact; concealment of vital facts; and the motive of respondent in respect to possible monetary or other gain.

In the order for final distribution in the estate of Racouillat, respondent as attorney for the estate was awarded compensation for extraordinary services in the sum of $2,500. The account and petition for distribution requesting the additional allowance, set forth that respondent had assumed liability for the services of both firms employed in the rejected claim litigation. The attorney prosecuting the claim was paid from funds of the American Company. The attorney representing the executor was paid by respondent. The decree sets forth compensation for extraordinary services but it is impossible to determine therefrom the amount representing legal services in the matter of the executor's defense in the claim action. Neither the account nor the petition for distribution attempted to segregate items making up the requested allowance for extraordinary services. The record does not disclose that respondent gained any monetary advantage by the rejection of the claim; rather that his financial interest as a stockholder in plaintiff company would have been benefited by a successful outcome of the suit.

Appellant points to testimony in the present case of the attorney representing it in the rejected claim suit, to the effect that he understood from information furnished him by respondent that the acts of directors and officers had been approved. The testimony is as follows: "In 1921 it [the amount of the loans] was crystalized into that amount of money. Furthermore, as I understood, at each annual meeting of the board of directors the acts of the officers had in all respects been verified; furthermore, that the stockholders generally knew all about this . . . Q. This is all that Mr. Harron has been telling you? A. Well, naturally I got my information from Mr. Harron . . . Q. As I recall your

testimony, Mr. Harron told you that these withdrawals and payments to the California Novelty Wooden Box had been ratified by the stockholders and directors of the American Box & Drum? A. I believe in that respect he told me the customary resolutions approving all the acts of the officers and directors had been passed at each meeting of the directors and stockholders." In his appearance as a witness respondent failed to comment upon this testimony.

Appellant contends that the above, in addition to the procuring by respondent of the verification of the complaint in the claim action, personally filing it and delivering a copy to the attorney for the executor, his presence in court at the time of argument upon the demurrer, forecasting decision thereon, the claim for additional fees for extraordinary services, the fact that he represented Racouillat, and subsequently his estate as attorney, together with his position as director and secretary of plaintiff company, constituted proof of the commission of actual fraud by him to the financial injury of appellant; and that respondent's conduct constituted if not actual, at least constructive fraud upon plaintiff corporation (Civ. Code, sec. 1573) regardless of whether or not he received any actual benefit therefrom. On the issue of fraud the trial court found against appellant.

The finding of respondent's innocence of fraud seems to be predicated upon the theory either that he did not misrepresent and did not conceal vital facts, or that any failure by him to disclose known facts to the attorney employed to bring the claim suit on behalf of the plaintiff herein was due to his failure to appreciate their legal significance. That the trial judge adopted the latter view appears from his statement in the record as follows: "That defendant did not handle this matter as efficiently as he should have, is evident, but that fact would not constitute fraud."

Appellant's contention raises several queries, viz., whether the evidence compels the conclusion that respondent was guilty of fraud as a matter of law, whether it upholds the finding that he was not guilty of fraudulent acts or conduct in connection with the claim and whether he believed that a valid claim existed? If this last query be answered in the affirmative, a finding of fraud could be sustained. In this respect appellant places great reliance upon a letter dated January 18, 1936, by respondent to the widow of Racouillat.

It deals extensively with matters pertaining to the estate, the American Company, etc., including the possibility of Mrs. Racouillat's resignation as executrix, in connection with which respondent declined to advise her. The portion pertinent to the question here involved is as follows: ''There is still another item of $———, which George took from the American Box & Drum Company and loaned to the California Novelty Wooden Box Company. When informed of this, I pointed out to him, that, at any time, this transaction was questioned he, personally, would be liable to the American Box & Drum Company for that amount. On several occasions George spoke of this fact to Emil. Personally, I would like to see the residuary legatees, yourself and Adeline, arrange in some way to pay any portion of this that is unpaid, including the accumulated interest, so that no claim could ever be filed by the American Box & Drum Company against George's estate. As to this phase of this letter, I should like to have you and sister Adeline meet Nissen and me and discuss it at length and see if a satisfactory plan can be devised to accomplish this end.

''I want to add that my advice to George that he had a personal liability for this $5,000 and interest was solely because he was loaning the American Box & Drum Company's money to the California Novelty Wooden Box Company without adequate, if any, security, and by security, I mean even ability to repay, and George, as I said before, recognized his liability and always intended to repay the loan any time that the American Box & Drum Company demanded, which really meant when George felt it proper to do so, as he, alone, controlled the actions of the American Box & Drum Company.

''In connection with this last item, in spite of George's indifference thereto, I procured the necessary documents to obligate the stockholders to guaranty in writing the payment of this indebtedness in the proportion in which they hold stock, and on account of this, the liability of the estate will be reduced in proportion to the amount received from the other guarantors under this instrument. Of course, the estate will pay its one-third. On the other hand, the gain of the American Box & Drum Company will benefit the estate practically one-third if all are able to pay their obligations, thus reducing the estate's loss to a minimum. . . .

"This is an exceedingly long letter, but I have thought it my duty, as well as a necessity, to put all these matters in writing, and want you, my dear Mae, after you have read this letter and we have completed our talk, to take it with you, study it carefully, digest it thoroughly, and if you feel so inclined to consult with anybody you like as to its contents, and thereafter decide what you wish to be done in reference to all matters therein contained, and I also want Adeline to follow the same course."

A careful reading of the letter indicates that respondent had not given consideration to the question of the statute of limitations, since in the letter he refers to the liability of the stockholders of the Novelty Company as an existing liability though in fact barred, as well as to an existing liability of the estate arising from Racouillat having made the loans without security. Respondent testified that he changed his view of liability as based on the last mentioned ground when he recalled that when the loans were made the stockholders' liability law had not been repealed, and since the stockholders of the Novelty Company were all quite solvent the loans were not without adequate security.

In spite of the somewhat unusual circumstances appearing in connection with respondent's position as attorney, it cannot be concluded that he was guilty of fraud as a matter of law. The court's finding that he was not guilty of fraudulent acts or conduct in connection with the claim and the subsequent suit thereon finds a sufficient foundation in the evidence introduced, including the testimony of the attorneys in the suit based upon the claim. Appellant does not attribute responsibility for the loss of the suit to the attorney who therein represented it, nor does it criticize either attorney in the action on the claim. In .this regard it referred to the attorney representing the executor as one of the most eminent members of the bar. Each side testified that respondent had not directed nor interfered with the conduct of the case. Each acted independently in the preparation of the pleadings, the conduct of the trial and the submission of the case. In the absence of proof of facts and circumstances which constitute fraud as a matter of law, we are not prepared to say that the trial court was incorrect in drawing an inference of fair dealing rather than of corrupt practice. In *Estate of Ross*, 199 Cal. 641, 651 [250 Pac. 676], the court

said: "It is true that the trial court is the exclusive judge of the weight to be given to the evidence, but it is also true that the presumption is in favor of honesty and fair dealing (see *Estate of Sweetman, supra,* at p. 18), and the burden is upon the party asserting the fraud to prove it by some substantial evidence (12 Cal. Jur. 817). The facts and circumstances shown in evidence must have given rise at least to a reasonable inference of fraud, and not a mere suspicion thereof (*Roberts* v. *Burr,* 135 Cal. 156 [67 Pac. 46]). Indeed, it has been held that 'if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of court or jury to draw the inference favorable to fair dealing.' (*Ryder* v. *Bamberger,* 172 Cal. 791 [158 Pac. 753].)"

█ During the oral argument on appeal the question was suggested whether, assuming the conduct of respondent to be mere negligence in his failure to appreciate the possible importance of certain facts, the law applicable thereto or the correct course to be pursued, such a condition of facts would come within the definition of constructive fraud? In support of its theory that it would, appellant cites *Younglove* v. *Hacker,* 15 Cal. App. (2d) 211 [59 Pac. (2d) 451]. In that case one Hacker was named as trustee. The basis of the action was that the trustee while so acting had neglected to carry out an agreement. To follow the holding arrived at on the facts of that case, we must in the present appeal conclude that respondent assumed the position of a trustee to protect the interests of appellant. There are of course conditions of fact under which that conclusion might well be reached, but here we find that respondent, on account of the conflicting interests of the American Company and the executor of the estate withdrew both as attorney for plaintiff and for the executor. Assuming that respondent's advice to the executor to reject the claim was unsound and that subsequently, on account of his not appreciating its importance, he failed to give full data to the attorney prosecuting or defending the claim suit, there could be no justification to apply the principle followed in the Hacker case to the acts or conduct of an attorney unless there be disclosed an intent on his part to defraud, a situation which does not appear

from the findings in this case. Appellant's argument in this respect is tenuous and unconvincing.

The judgment is affirmed.

Peters, P. J., and Goodell, J., *pro tem.*, concurred.

A petition for a rehearing was denied May 22, 1941, and appellant's petition for a hearing by the Supreme Court was denied June 19, 1941.