[Civ. No. 2020. Fourth Appellate District.—May 17, 1937.]

In the Matter of the Estate of EVA J. LeSURE, Deceased. IONE T. LOCKWOOD et al., Appellants, v. L. C. LeSURE et al., Respondents.

Harvey H. Atherton for Appellants.

T. A. Turner and Gray, Cary, Ames & Driscoll for Respondents.

JENNINGS, J.—This is an appeal from a judgment denying probate to a will of Eva J. LeSure, deceased, as a lost or destroyed will and an attempted appeal from an order denying a motion for a new trial.

The procedural background of the action is as follows: On November 18, 1935, L. C. LeSure, the surviving husband of the above-mentioned deceased, filed a petition in the superior court alleging that Eva J. LeSure died intestate on November 11, 1935, leaving an estate in San Diego County which consisted of both real and personal property and praying for the appointment of petitioner's nominee, Iver Gellein, as administrator of the estate. On December 2, 1935, Iver Gellein and Ione T. Lockwood filed a petition with the court alleging that Eva J. LeSure died testate on November 11, 1935, leaving a will which had been lost or destroyed either in the lifetime of said decedent without her knowledge or consent or shortly after her death and praying for the issuance of letters testamentary to the petitioner Iver Gellein, who was alleged to have been named in the will as executor thereof. Thereupon a time was designated for hearing this petition and notice thereof was duly given. Prior to the hearing of the petition, L. C. LeSure filed an amended petition praying that letters of administration be issued to him, and two nephews and a niece of Eva J. LeSure filed objections to the granting of the Lockwood-Gellein petition alleging that said decedent died intestate.

The petitions thus filed together with the aforesaid objections came on for hearing before the court without a jury and at the conclusion thereof the court found that, during the latter part of the year 1934 Eva J. LeSure executed a will which was not revoked or destroyed by her and was not destroyed or disposed of with her knowledge or consent during her life. The court further found that said will was last seen in the home of the testatrix and that it had been fraudulently and wrongfully concealed or destroyed by someone other than the testatrix either shortly before her death without her knowledge or consent or after her death. The court

accordingly entered judgment whereby it was adjudged that Eva J. LeSure died testate and that the will be admitted to probate as a lost will. Thereafter L. C. LeSure and the above-mentioned objectors joined in a motion for a new trial which the court granted specifying in its order granting the motion that the only evidence which would be received on the rehearing should be such as would bear directly on the issue of whether or not the decedent had voluntarily destroyed her will during her lifetime or whether the will was in existence at the time she died or had been wrongfully or fraudulently concealed or destroyed by someone other than the testatrix without her knowledge or consent. It was further expressly provided in the order as a condition to granting the motion that it be stipulated between the parties to the contest that the evidence which had been received upon the former trial should remain as a part of the record and be considered by the court on the rehearing of the matter.

The retrial of the proceeding held under the conditions specified in the above-mentioned order resulted in the rendition of a judgment which decreed that the deceased died intestate and that the petition of Ione T. Lockwood and Iver Gellein for probate of the will alleged to have been lost or destroyed as aforesaid be denied. As a foundation for such judgment the trial court found that Eva J. LeSure had executed a will as described in the petition for probate during the latter part of the year 1934 and that thereafter she took and retained possession of the instrument until she destroyed it with intent to revoke the same at some time between the middle part of September, 1935, and the date of her death, which was November 11, 1935. The court further expressly found that the will had not been lost or destroyed without the knowledge or consent of the testatrix.

The proponents of the will in due time presented a motion for a new trial which was denied and this appeal was thereafter perfected.

The principal contention advanced by appellants on this appeal is that the above-mentioned findings are lacking in evidentiary support. Concededly this familiar contention must be examined in the light of the established principle that the presence in the record of any evidence which lends support to the criticized findings precludes reversal of the judgment on the ground of evidentiary insufficiency.

In giving consideration to this contention it must be borne in mind that the burden of proving that the will which appellants sought to have probated was either in existence at the time the testatrix died or had been fraudulently destroyed without the knowledge of the testatrix during her lifetime rested upon appellants as proponents of the will. Section 350 of the Probate Code so provides. Apparently there is no contention to the contrary. Having this point in mind we may then proceed to an examination of the record for the purpose of discovering whether or not any evidence was submitted which may fairly be declared to lend support to the aforesaid findings which are attacked by appellants.

The court expressly found that the will which appellants sought to have probated was executed by the deceased during the latter part of the year 1934. This finding is amply supported by the evidence and at no time during the trial was any contention to the contrary offered by respondents. The evidence also showed that after this will was executed the testatrix took it into her possession and that she thereafter retained possession of the instrument. Two witnesses testified that they saw the will on two different occasions prior to the death of the testatrix. These witnesses were L. C. LeSure and Elise Leabo. The former witness, who is the surviving husband of Eva J. LeSure, testified that he saw it at some time during the latter part of September or early in October, 1935. The latter witness, who was the housekeeper for the LeSures, testified that she saw the will on the day Eva J. LeSure went to the hospital where she died approximately a week thereafter. The testimony of this witness was so important to appellants' case that some reference to it is warranted. She stated that she assisted Eva J. LeSure in preparing for the trip to the hospital, that Eva J. LeSure was then sitting in her bed and requested the witness to bring her a certain black grip or valise which witness found in the closet of another bedroom in the house and brought to Eva J. LeSure, that the witness observed that Mrs. LeSure removed a number of papers from the grip and placed them beside her on the bed, that the witness further observed that she took one of the papers in her hands and opened and read it, that the witness was able to see that this document was entitled "Last Will and Testament of Eva J. LeSure", that this title was written in longhand apparently with pen and ink, that after Mrs. LeSure had finished

reading this paper she folded it and returned it to the grip which she then requested the witness to place in the closet and to lock the door thereof and remove the key therefrom. This witness also testified that some 20 or 30 minutes thereafter she had occasion to look in the grip and observed that there were papers in it. The witness further testified that later in the day L. C. LeSure returned from the hospital where he had gone with his wife and that he then went into the bedroom in whose closet the black grip had been placed, locked the door of the bedroom and remained in the room for about 20 minutes, came out and went to another part of the house where he remained for a time, then returned to the bedroom whose door he again locked and in which he remained for 5 or 10 minutes. The witness also testified that she looked for the grip the following morning and being unable to find it inquired of LeSure where it was and was informed that he had removed it from the house for the purpose of having a key made for it. The witness further testified that a few days after this conversation she saw the grip in a closet in the bedroom occupied by LeSure.

With respect to the above-mentioned evidence it may properly be observed that careful reading of the testimony indicates that this witness did not at any time identify the instrument which she stated she saw in the hands of the deceased on the day she went to the hospital as the will which appellants sought to have probated. In this connection it should also be noted that the attorney who drew the will whose probate was sought and the wife of this attorney who was one of the witnesses to the will testified positively that the will which was executed during the latter part of the year 1934 bore the title "Last Will and Testament" which was typewritten in large type, that the decedent's name did not appear in the title, and that no handwriting other than the signatures of the testatrix and the witnesses appeared in the will.

The witness L. C. LeSure testified positively that his wife, Eva J. LeSure, burned the 1934 will on a date which on the rehearing he fixed as being about the middle of September, 1935, under circumstances which he narrated. The testimony of this witness is the only evidence appearing in the record which directly and specifically tended to prove the destruction of the will that appellants sought to have probated. With respect to this portion of the testimony given

by the witness it may be remarked that the reading of it impels the observation that the story this witness told of the will's destruction was at least fantastic. Its oral recitation was apparently not more impressive since the trial court at the conclusion of the first hearing remarked that he simply could not give credence to the story of the will's destruction as related by this witness and there is an express finding which the court made at the conclusion of the retrial of the action that Eva J. LeSure did not destroy the will by burning it during the middle part of the month of September, 1935.

Counsel for appellants has seized upon this express rejection by the trial court of the only evidence which tended to show that the testatrix had herself destroyed the will *animo revocandi* as the foundation for his argument that no evidence was produced which sustains the attacked findings heretofore stated particularly that which finds that at some time between the middle part of September, 1935, and the date of her death the testatrix destroyed the will with intent to revoke it. Unfortunately for appellants, as heretofore pointed out, the burden of proving loss or fraudulent destruction of the testamentary instrument rested upon appellants. No burden rested on respondents to show that the testatrix herself destroyed the will and the trial court's rejection of the only evidence in the case that tended to prove this fact is of no assistance to appellants. Certainly they were not thereby relieved of the burden of proof which the law casts upon them in a proceeding of this character.

Examination of the record herein compels the conclusion that it may not be declared that the findings which appellants attack are so lacking in evidentiary support that the judgment rendered in conformity therewith must be reversed. In the first place, there is ample evidence that the testatrix took possession of the will after its execution and that she thereafter retained possession of it. There is also evidence that on a number of occasions after the 1934 will was executed the testatrix discussed with the attorney who had drawn the will the matter of making a new will and expressed her dissatisfaction with some provisions of the 1934 will and on one occasion inquired of him as to what result would be achieved if she should destroy her will as to which he advised her. The witness B. E. Gray testified positively that on October 16, or 18, 1935, he had a con-

versation with Eva J. LeSure in which she said "I destroyed my will. I have no will and I don't know whether I will make another one." Another witness, Adeline L. Holcomb, testified that she had a conversation with Eva J. LeSure during the first week in October, 1935, in which Mrs. LeSure made the statement that she had burned her will a few days prior to the date of the conversation.

The above-mentioned evidence is ample to sustain the finding that Eva J. LeSure herself destroyed the 1934 will *animo revocandi* at some time between the middle of September, 1935, and the date of her death. ■ Furthermore, it must be borne in mind that there is a definite presumption which is applicable to a situation of the character which is here presented. This presumption is stated in *Estate of Sweetman*, 185 Cal. 27, 28 [195 Pac. 918], as follows: "A will last seen and known to have been in the possession of the decedent, which cannot be found after his death, will be presumed to have been destroyed by him and with an intention of revoking it, since the law always presumes in favor of the innocence of an act, and any other inference would involve a finding of a wrongful or fraudulent destruction of the will by a third person." Language to the same effect is to be found in *Estate of Johnston*, 188 Cal. 336, 340 [206 Pac. 628]; *Estate of Ross*, 199 Cal. 641, 646 [250 Pac. 676]; *Estate of Smith*, 140 Cal. App. 508, 516 [35 Pac. (2d) 335]; *Estate of Allan*, 15 Cal. App. (2d) 272, 276 [59 Pac. (2d) 425]. Appellants maintain, however, that the presumption being disputable is evidence of the weakest and least satisfactory character and cite numerous authorities which thus characterize disputable presumptions generally. Sufficient answer to this argument is provided by the following quotation from *Estate of Duffill*, 14 Cal. App. (2d) 284, 285 [58 Pac. (2d) 185]: "What the appellant seems to forget is that the presumption of revocation is in itself evidence of a substantial nature and that whether this presumption is overcome by other evidence depends upon the weight of the evidence. It is the province of the fact finder to determine where the preponderance of evidence lies, and this court on appeal will not substitute its opinion for that of the trial court as to the weight of the evidence where there is any substantial evidence to sustain the trial court's finding."

Much of the argument of appellants relating to the matter which is now being considered is devoted to an attack on

the credibility of various witnesses who testified on behalf of respondents and to an effort to sustain the contention that the preponderance of the evidence is against the disputed findings. Manifestly, it would be superfluous to insert in this opinion a citation of authorities in support of the familiar principle that the weight of evidence and the credibility of witnesses are matters which are confided exclusively to the determination of the trial court. The quotation included in the immediate preceding paragraph is apropos on the point of evidentiary preponderance. To the same effect is the text of the opinion in *Estate of Ross, supra,* at page 651. With respect to the matter of credibility the Code of Civil Procedure expressly declares that the trier of facts shall be the exclusive judge of the credibility of witnesses. (Sec. 1847, Code of Civil Procedure.) This settled rule is stated with a long line of supporting authorities in 27 California Jurisprudence, at page 182.

Appellants further complain that the trial court committed prejudicial error in the reception of specified evidence and in rulings which it made sustaining objections to certain inquiries propounded to designated witnesses. It is also especially urged that the court committed reversible error in granting a motion of respondents whereby certain evidence which had been admitted during the course of the trial was stricken from the record.

The inquiries to which it is claimed the trial court erroneously sustained objections were questions which were designed to educe evidence that would show the friendly and harmonious relationship which existed between the decedent and her two sisters who were the principal beneficiaries in the 1934 will. It is urged that the evidence thus sought to be developed was material and relevant in that it would have indicated the improbability of the testatrix having herself destroyed the will. It is contended that the court's action in sustaining objections to the inquires improperly circumscribed appellants in their effort to rebut the aforementioned presumption of destruction by the testatrix particularly in view of the fact that the court later admitted evidence submitted by respondents which tended to show that the deceased had made statements evidencing a hostile and suspicious attitude toward her sisters.

Examination of the record shows that the objections were sustained on the ground of immateriality because, as the

court remarked, the testimony of L. C. LeSure theretofore given showed that the relationship between the decedent and her sisters was friendly and affectionate. While it must be conceded that the record indicates that the court's recollection of L. C. LeSure's testimony on this point was not strictly accurate it was nevertheless the impression which the court had received and we are not disposed to declare that prejudicial error was committed in sustaining the objections in view of the court's twice-repeated statement to the effect that L. C. LeSure had theretofore testified as above indicated. Since the court had evidently recollected that LeSure had testified that aside from occasional quarrels the relationship between the testatrix and her sisters was friendly and affectionate no useful purpose could be served in producing further evidence to the same effect which in the court's mind would be purely cumulative. It should further be observed that at the time the rulings sustaining objections were made the only evidence which was then before the court that bore upon the matter of the feeling, friendly or otherwise, which the testatrix had for her sisters consisted of L. C. LeSure's testimony. Subsequently some evidence was received over objections urged by appellants which showed that at various times the testatrix had made statements which indicated that the relationship between her and her sisters was not entirely harmonious and that she entertained the opinion that the chief motive for whatever interest her sisters manifested in her was not sisterly affection but the hope and expectation that she would leave them the bulk of her estate. The reception of this last-mentioned evidence is urged as the principal basis for the contention that the court's action in sustaining objections to questions that would have elicited evidence showing that the testatrix had a friendly and affectionate regard for her sisters constituted an undue limitation on the right of appellants to show the improbability of the testatrix having herself destroyed her will, thereby materially reducing the amounts which she had provided her sisters should receive from her estate.

There are several answers that suggest themselves to this contention. Appellants have themselves indicated one that is sufficient in pointing out that "the testimony is very definite and conclusive that Mrs. LeSure and her sisters were always on the most friendly terms" and in citing evidence to

this effect which was produced during the trial. It is apparent therefore that the complaint of appellants with regard to undue limitation is not sustained when the record as a whole is considered. Appellants were permitted to show by the testimony of numerous witnesses without objection that the relationship which existed between testatrix and her sisters was most friendly and harmonious. We conclude, therefore, that no prejudicial error was committed by the court in making the rulings of which appellants complain.

█ The evidence which it is contended the trial court erroneously admitted consists of the testimony of T. A. Turner, the attorney who prepared the will which appellants sought to have probated. This witness was permitted to testify over objection of appellants that at some time about the middle of October, 1935, L. C. LeSure had stated to him that the testatrix, Eva J. LeSure, had burned the 1934 will. A voluntary statement of the witness Turner to the effect that on the day following Eva J. LeSure's arrival at the hospital in November, 1935, L. C. LeSure told him about the destruction of the will was also allowed to stand over objection by appellants. It is urged that this evidence consisted of self-serving declarations of L. C. LeSure and was therefore incompetent and its reception prejudicially erroneous.

It is unnecessary to decide whether or not this evidence was improperly received. It must be remembered that L. C. LeSure testified positively that his wife burned the will at a certain time and that no other witness gave any testimony relative to the destruction of the will by the testatrix. The evidence of whose admission appellants complain related exclusively to L. C. LeSure's explanation of the destruction of the will by the testatrix and its only purpose was to corroborate LeSure's testimony on this point. However, the trial court, as above noted, left no doubt that it disbelieved the story related by LeSure on the witness stand with respect to the destruction of the will and made an express finding that the testatrix did not destroy the will at the time and in the manner described by him. Assuming then that appellants are correct in their contention that the corroborative evidence was improperly received it is manifest that the error thus committed was harmless and should be disregarded on this appeal.

■ The same process of reasoning is applicable to the contention of appellants that the trial court erroneously granted a motion of respondents to strike from the record certain testimony given by designated witnesses. It may be assumed without deciding the point that the court erred in granting the motion. Examination of the transcript, however, reveals that the witness L. C. LeSure himself admitted the truth of the testimony of the witnesses regarding various conversations which they had with him and the statements which he made during these conversations and his peculiar conduct with reference to his alleged search for a will which he testified he knew had been destroyed by the testatrix. The evidence which was stricken from the record related to these matters. Since the record shows that the witness Le-Sure expressly admitted that he had the conversations and made the statements attributed to him and that he had indulged in the strange conduct of pretending to search for a will which according to his own story he knew was no longer in existence it is not conceivable that appellants could have been prejudiced by the court's action in striking from the record evidence which was merely cumulative and corroborative of LeSure's admissions. In so holding it should be observed that the evidence was stricken only as to the objectors and respondents, Stephen Baxter, Fred A. Baxter, and Mrs. James S. O'Neill and that the trial court expressly ruled that the evidence had a direct bearing on the credibility of L. C. LeSure and that as to him it should remain in the record and be considered in connection with the important feature of his credibility. There is, of course, no complaint by appellants that the trial court was not entitled to consider the stricken evidence as bearing on L. C. LeSure's credibility.

Being persuaded that no reversible error was committed by the trial court in its rulings with respect to the admission and rejection of evidence and that it may not be declared that the findings which appellants attack are lacking in evidentiary support it follows that the judgment from which this appeal has been taken must be affirmed. ■ Since no appeal lies from an order denying a motion for a new trial the attempted appeal from such order is dismissed.

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 15, 1937.