[Civ. No. 22988. First Dist., Div. Three. Feb. 1, 1967.]

ALEX G. SPARKS et al., Plaintiffs and Appellants, v. DEAN C. LAURITZEN, as Administrator, etc., Defendant; HAZEL H. HANSON, Individually and as Administratrix, etc., et al., Defendants and Respondents.

Snow & Heer and Naranjan S. Heer for Plaintiffs and Appellants.

Stark & Champlin, John F. Wells and George F. Dunker, Jr., for Defendants and Respondents.

SALSMAN, J.—Appellants Alex and Mary Sparks brought this action to impose a constructive trust upon all of the assets in the estate of James Morrow, deceased. It was the theory of appellants' case that the decedent, during his life-

time, agreed orally with appellants to devise and bequeath his entire estate to them in return for their promise to make him a member of their family and to permit him to reside with them. The trial court denied all relief and plaintiffs appeal.

Appellants met the decedent, who was then a seaman, in 1949 when he came to their house with his sister Marie to buy a dog. Decedent bought the dog. Not long after this, while decedent was at sea, Marie died. Appellants had seen Marie frequently since purchase of the dog. Upon her death they resumed its care. When decedent returned from sea he was again in contact with appellants. At times he stayed for the evening meal, and occasionally spent the night with them.

In late 1949 or early 1950 decedent asked appellants to take him in. They agreed, and he moved into their home.

Decedent owned property near Hornitos, in Merced County, where he was building a cabin. From 1950 to 1959 decedent alternated between staying with appellants and at his cabin. Appellant Alex said that decedent stayed with them an average of ten days to two weeks at a time, six times a year. Appellant Mary, however, thought decedent stayed with them two or three times each year for one to three weeks at a time. From 1960 until decedent's death about December 25, 1962, decedent visited appellants rarely, if at all.

When decedent stayed with appellants they supplied food, laundry, cleaning and personal services, and gave him companionship. They also took care of his dogs. A room was available for him in their home when he wished to use it. Decedent made several gifts to appellants, usually small items to which some personal sentiment attached. He referred to appellants as his "family" and according to their testimony considered himself, as they considered him, a member of the family.

The decedent had his lawyer prepare a draft of a will in which he left his estate to appellants. The draft was never executed as a formal will, however, because decedent apparently had some objection to it unrelated to its provision for appellants.

Appellants testified that decedent prepared a holographic will in which he also left all of his estate to them, and that in 1955 he had permitted both appellants to read that will in its entirety. Upon his death, however, no will was found, although the draft of the formal will was still in decedent's possession.

The trial court found that there was no agreement between the decedent and appellants, but noted in its conclusions of

law that even if such an oral agreement were established it would be barred by the statute of frauds. (Civ. Code, § 1624, subd. 6.) The trial court further found that the decedent did represent at various times that he would leave his property to appellants, but that such representations were not made in consideration for any promise of appellants, and that appellants did not condition their services to the decedent upon his promise to leave them all of his property at his death.

Appellants first contend that the trial judge decided the case against them because of a mistaken belief that the complaint did not state a cause of action. This is not supported by the record, however. It is true that, in his memorandum decision, the court did express doubt that the complaint was sufficient, but the court also said that for the purpose of decision it would be assumed that the complaint stated a cause of action. Moreover, with minor exceptions, the court reviewed all of the relevant evidence offered by both parties, and at the conclusion of the trial made findings of fact reflecting full consideration of all the evidence. Thus the case was tried and submitted to the court upon its merits. Under these circumstances any deficiency in the complaint is of no importance.

The critical issue in the case is the existence of the claimed oral agreement. It was appellants' burden to prove the agreement by clear and convincing evidence. (*Notten* v. *Mensing*, 3 Cal.2d 469, 471 [45 P.2d 198].) The trial court heard all the relevant evidence and after evaluating it concluded that there had never been an agreement between the parties whereby decedent was obligated to will all of his estate to appellants. If this finding is supported by the evidence then recovery is foreclosed and the judgment must be affirmed.

Our review of the record discloses ample support for the trial court's finding that there was no agreement between the parties. There is evidence to the effect that decedent stayed overnight with appellants several times before he moved his belongings to their home, and that he first requested a more permanent arrangement after he sold his home in Oakland. When decedent first came to reside with appellants he had his cabin in Hornitos, and appellants did not think the arrangement permanent. Appellant Mary asked decedent if he could not stay with his cousin in Richmond, but decedent did not wish to do so. According to appellants, decedent finally asked that the arrangement be made permanent, saying: "If you do let me come into your familly, I will

leave you everything I have." Appellant Mary testified that decedent was welcomed into their home and allowed to stay before he told them he was going to leave all of his property to them, and further that board and room was not being furnished decedent in exchange for his promise to leave them all of his property. Appellant Alex also agreed that in the beginning there was no exchange of board and room for decedent's promise. At first Alex doubted that decedent would keep his promise, and only later came to believe it.

The foregoing evidence supports the trial court's finding that there was no agreement between the parties. It is a reasonable inference from this evidence, and one which the trial court obviously drew, that appellants would have given decedent room and board from time to time even in the absence of his statement that he would leave his property to them. In fact, appellants did provide decedent with board, room and companionship before his promise, as they readily admit. Although appellants characterize their arrangement with decedent as an oral contract, they did not persuade the trial judge that their claims were true. Substantial evidence supports the trial judge's conclusion that there was no bargained-for consideration present here, and hence no contract. (See *Enslow* v. *von Guenthner*, 193 Cal.App.2d 318, 322 [14 Cal.Rptr. 231], and cases cited.)

Appellants also contend it was error on the part of the trial court to exclude certain evidence offered by them to show the existence of a close family relationship between decedent and appellants. This was relevant, they say, to the issue of unconscionable injury as a basis for estoppel, which we assume means estoppel of respondents to rely upon the statute of frauds as a bar to enforcement of the alleged oral agreement. But since the trial court found that an oral contract did not exist, no such issue as estoppel to raise the statute of frauds as a defense is present. (See *Monarco* v. *Lo Greco*, 35 Cal.2d 621 [220 P.2d 737].)

Appellants complain of certain questions asked by the court concerning adequacy and fairness of consideration for the claimed oral contract. They contend, in effect, that the court measured the adequacy of consideration for the oral agreement against the size of decedent's estate. This argument, too, fails for the obvious reason that the trial court found there was never any agreement between the parties. The trial court did not find that a contract had been made, but was not supported by adequate consideration flowing from appellants.

On the contrary it concluded from the evidence that there had never been an agreement such as appellants allege and hence adequacy of consideration to support a contract is not involved.

Appellants finally contend it was error for the court to rule irrelevant certain evidence which tended to show that decedent did in fact leave a valid holographic will in their favor, but that such will was accidentally or mistakenly disposed of without any intent on the part of decedent to destroy it. The evidence to which appellants refer is the testimony of Hugh Pontious, who related that about September 1962, some three months before decedent's death, when the subject of a will was mentioned to decedent, he said: "That is all taken care of. I have already written one." The decedent showed no document of any kind to the witness, whose knowledge was limited entirely to the oral comment we have quoted. There was other evidence, found in appellants' testimony, that about six years before his death, decedent had shown them a handwritten will, apparently sufficient to satisfy the statutory requirements for a holographic will, and that this will left all of decedent's property to them.

Appellants first argue that the trial judge ruled this evidence irrelevant. No such ruling appears in the record. Apparently the trial judge allowed the evidence to remain in the record, but concluded, as we do, that it does not aid appellants.

Probate Code section 350 provides that: "No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed by public calamity, or destroyed fraudulently in the lifetime of the testator, without his knowledge. . . ." Here appellants' evidence, given its full value, falls far short of proof that the alleged holographic will was in existence at the time of the death of decedent. It shows nothing more than that the decedent said, three months before his death, that the matter of his will had been "taken care of." Decedent's holographic will, which appellants say they read some six years before his death, was returned to his possession after appellants read it. It is inferable from decedent's statements to the witness Pontious that the will mentioned to him was still in decedent's possession. Where the decedent is not incompetent and it is shown that a will was in his possession before his death, but after death cannot be found, it is presumed that the decedent destroyed it, with

intent to revoke it. (*Estate of Ross,* 199 Cal. 641 [250 P. 676] ; *Estate of LeSure,* 21 Cal.App.2d 73 [68 P.2d 313] ; *Estate of Duffill,* 14 Cal.App.2d 284 [58 P.2d 185] ; *Estate of Flood,* 47 Cal.App.2d 809 [119 P.2d 168] ; see also 4 Witkin, Summary of Cal. Law (1960) pp. 3226, 3227.) That presumption applies here. Appellants have offered no evidence which in any way tends to rebut it. They also suggest that, in the search of decedent's personal effects after his death his hand-written will might have been deemed unimportant and easily "lost in the shuffle." We are unable to assess the accuracy of this supposition. No evidence supports it, save the fact that no will was found among decedent's possessions after his death. Since the holographic will described by appellants in their testimony was last seen in decedent's possession and was not found after his death, the presumption applies and operates wholly to defeat any of appellants' claims that might have been based on that will.

■ Appellants seem to argue also that if the decedent's holographic will was lost or destroyed accidentally, during his lifetime, it may be proven. But Probate Code section 350 requires a showing that the absent will was lost or destroyed by public calamity or by fraud, in the lifetime of the testator, without his knowledge.

■ Appellants' evidence fails to satisfy any of the requirements of the code section because there is no proof that the alleged will was in existence at the time of decedent's death, and not the slightest evidence to show its destruction, by fraud or public calamity, during his lifetime. The strict requirements of the statute for the proof of lost or destroyed wills are imposed to avoid fraud. They reflect the salutary efforts of the law to protect a decedent's estate and to insure descent of his property to his rightful heirs upon his death. (See *Estate of Janes,* 18 Cal.2d 512, 518 [116 P.2d 438].)

Appellants have appealed from the order denying their motion for a new trial, as well as the judgment, but that order is not appealable and is therefore dismissed. The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 29, 1967.