WALLACE N. GRIFFITH, Appellant, *vs.* C. A. HIGINBOTOM *et al.* Appellees.

*Opinion filed February 21, 1914.*

1. WILLS—*presumption where will kept in testator's possession is not found after his death.* Where a will is retained by the testator after its execution and kept in his possession and after his death it cannot be found the presumption is that the testator destroyed it *animo revocandi,* and it will not be presumed that it was destroyed by some other person without the testator's knowledge, as to do so would be presuming a crime.

2. SAME—*what must be shown to overcome presumption that testator destroyed will.* To overcome the presumption that the testator destroyed a will in his lifetime with the intention of revoking it, it is incumbent upon the party seeking to establish such will as a lost will to show that the instrument was in existence at the testator's death and that it was lost or destroyed since that time.

3. SAME—*what does not show that will was in existence at testator's death.* Letters written by the testator a few days before his death, referring to his will as being in a certain place, do not show that it was in existence at his death, where there is no will found in such place after his death nor in any other place, but only a series of papers and memoranda stating what disposition he desired to make of his property.

4. SAME—*contents of alleged lost will cannot be established by declarations of testator, alone.* Declarations of a testator are admissible in evidence to corroborate the testimony of others who testify from their own knowledge to the contents of a lost will, but the contents of such lost will cannot be proved by the declarations of the testator, alone. (*In re Page,* 118 Ill. 576, explained.)

APPEAL from the Circuit Court of Fayette county; the Hon. ALBERT M. ROSE, Judge, presiding.

BROWN & BURNSIDE, for appellant.

F. M. GUINN, and B. W. HENRY, for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Appellant filed a petition in the probate court of Fayette county to establish and have admitted to probate an alleged lost will of William D. Griffith, deceased. The probate court refused to establish and admit to probate the writing offered as the last will of William D. Griffith. An appeal was taken to the circuit court, where the probate was again refused, and the cause is now brought here by appeal.

William D. Griffith died December 7, 1912. Some time between twelve and seventeen years prior to his death he executed a last will and testament. W. M. Fogler, an attorney residing at Vandalia, testified that he drew a will for Griffith but that he could not definitely fix the time when it was done; that it seemed to him to have been twelve or fifteen years prior to Griffith's death; that Griffith consulted him in reference to the matter at Vandalia and left direc-

tions for drafting the instrument, and that he drew the same and mailed it to Griffith at Brownstown, in Fayette county. J. E. Kiestling and David O. Pilcher, both of Brownstown, testified that about seventeen years prior to the death of Griffith they witnessed an instrument at Griffith's request which had already been executed by him and which he stated at that time to be his last will and testament. They both testified that at the time they attached their signatures to the paper it was so folded that they could see nothing upon it except the signature of Griffith, and that Griffith explained to them at that time that it was not necessary for them to know the contents of the instrument. Fogler testified that he had very little recollection in regard to the provisions of the will, and that he only remembered that Wallace N. Griffith, the appellant, and Anna B. Carter, were mentioned in the will in connection with the disposition of the real estate. This is the only proof contained in the record, aside from the declarations of William D. Griffith, in reference to the execution and contents of a will. There is no proof as to what disposition was made of the instrument after its execution, and there is no proof that it was preserved or remained in existence after its execution, except the declarations of William D. Griffith.

In 1906, which must have been about ten years after he had executed the will drawn by Fogler, Griffith wrote to Nathan Carter, a brother of Anna B. Carter, in which he stated that he had made a will and purported to give a copy of it. After concluding what appears to be meant to be the copy of his will, he makes additions which apparently had occurred to him later and which he desired to have considered as part of his will. This paper, consisting of two sheets, was placed in an envelope, and at the same time he placed in another envelope three written sheets and delivered them also to Nathan Carter, in which he apparently attempted to make various changes in his will. In the com-

munications contained in each of these envelopes he stated his reason for giving Carter the copy of his will (as he designates the various writings) to be, that if the will should be destroyed by fire or other means Carter would have this copy to show what disposition he had made of his property. During the year 1906 Griffith also wrote a series of letters to Wallace N. Griffith, in which he refers to the will he has made and to those who witnessed it and gives a description of the real estate that he had devised to appellant and Anna B. Carter. In March, 1909, Griffith executed what purports to be a codicil to his will, but it is evident that but a fragment of it has been preserved, and this fragment makes no disposition of any property. This was witnessed by Kiestling and Pilcher and Dr. L. E. Turney. On the back of this paper he designated it as a "codicil or supplement" to his will. On September 19, 1911, he wrote various memoranda providing for bequests which he states he has forgotten whether he mentioned in his will or not, and some additional bequests. At another time, the date of which does not appear, he wrote other memoranda which he states to be in addition to his will and relative to matters which he had forgotten, and which he designates as a "supplement" to his will, making bequests to various persons and the same devise to Anna B. Carter and Wallace N. Griffith as he stated in his letter to Nathan Carter had been made originally in his will. These last mentioned papers, being the codicil executed in 1909, the memoranda dated September 19, 1911, and the undated memoranda, were all sealed in one envelope, marked as his last will and testament and handed to Dr. L. E. Turney for safe-keeping. He wrote various other letters and statements up until within a few days of his death, in reference to his will and to the disposition he desired to make of his property. Under date of October 1, 1912, he wrote two statements, in one of which he declared that his will was in Dr. Turney's safe. On November 28, 1912,

he made written memoranda, in one of which was a declaration that his will was in the care of Dr. Turney.

No last will was found to be in existence after Griffith's death, the only papers found in reference to the will being the various letters and memoranda above enumerated and various others which we have not mentioned. Where a last will and testament, after its execution, is retained by the testator and kept in his possession and after his death cannot be found, the presumption is that the testator destroyed it *animo revocandi.* (*In re Page,* 118 Ill. 576; *Taylor* v. *Pegram,* 151 id. 106; *Boyle* v. *Boyle,* 158 id. 228; *Stetson* v. *Stetson,* 200 id. 601; *St. Mary's Home* v. *Dodge,* 257 id. 518.) It will not be presumed that such instrument has been destroyed by any other person without the knowledge or authority of the testator, as that would be presuming a crime. (*Stetson* v. *Stetson, supra; St. Mary's Home* v. *Dodge, supra.*) In order to overcome the legal presumption that Griffith had revoked the will he had executed during his lifetime, it was incumbent upon appellant to show that the will was in existence at the time of Griffith's death and that it had been lost or destroyed since that time. (*Beatty* v. *Clegg,* 214 Ill. 34; *St. Mary's Home* v. *Dodge, supra.*) There is no proof whatever that the will was in existence at the time of Griffith's death.

Appellant relies upon the written declarations of Griffith, made up to within a few days of his death, as proof that the will was then in existence, and upon the fact that he had retained, up until the time of his death, the same affectionate regard for appellant and Anna B. Carter that he had always felt, as proof that he had not destroyed the will *animo revocandi.* The written declarations of Griffith that were offered in evidence do not support the theory that he had not destroyed the will which had been drawn by Fogler. His last utterance on the question of his will, as appears from these writings, was to the effect that his will was in the custody of Dr. Turney and would be found

at his death in Dr. Turney's safe.  The papers which Griffith had previously given Dr. Turney for safe keeping and which he had designated as his will did not include the instrument drawn by Fogler, but were memoranda written by Griffith stating what disposition he desired to make of his property.  While it is true that throughout all of these writings, from the first letter written to Nathan Carter down until the last of the writings, Griffith always spoke of having devised his realty to appellant and Anna B. Carter, he kept indicating his desire to make additional bequests, to change bequests already made, and at one time that the devise to appellant and Anna B. Carter should be reduced from a fee to a life estate in his realty.  There was no proof of the existence of a will at the time of the death of Griffith, and the presumption obtains that the will which he had executed at Brownstown and which was witnessed by Kiestling and Pilcher was destroyed by the testator during his lifetime, with the intention of revoking it.

Appellant contends that if this view of the case should be taken and it be held that it must be presumed that Griffith destroyed the will during his lifetime, it is shown that he destroyed it because he believed he had made another will which would dispose of his property and not because he desired to die intestate, and that under such circumstances, having failed to make another valid disposition of his property, the revocation fails and the original will remains in force.  In support of this contention appellant seeks to invoke the rule that where the destruction of a will is so connected with the execution of another instrument as to raise the inference that the testator meant the revocation of his will to depend upon the efficacy of the new instrument as a disposition of his property such will be the legal effect, and if the later instrument proves to be inoperative from any cause the revocation fails.  Even if it should be conceded that the proof would warrant such a conclusion as to the facts and that the legal effect

would be to revive the will witnessed by Kiestling and Pilcher, still the action of the court in refusing to establish and probate the instrument offered was correct, for the reason that the will itself could not be produced and no proof was made of its contents except by the declarations of the testator. The contents of a lost will cannot be proved by the declarations of the testator, alone. Such declarations are admissible only to corroborate the testimony of others who can testify from their own knowledge as to the contents of the will. *Clark* v. *Turner,* 50 Neb. 290, and cases there cited.

Appellant relies upon *In re Page,* 118 Ill. 576, as holding that it is proper to prove the contents of a will by the declarations of the testator, alone. That case does not so hold. It will be noted that the contents of the will were there proven by the evidence of the attorney who drew the will for the testator and who produced a copy upon the hearing. While it was there said that declarations, written or oral, made by a testator after the execution of his will are, in the event of its loss, admissible not only to prove that it had not been revoked but also as secondary evidence of its contents, and the testimony of the various witnesses as to the declarations of the testator as to the contents of his will were held admissible, the question was not presented whether that testimony, alone, would have been sufficient to establish the contents of the will. That case is not in conflict with the other decisions holding that such evidence can be admitted only as corroborative, and is not sufficient, of itself, to establish the contents of an alleged lost will.

The order of the circuit court is affirmed.

*Order affirmed.*