[Civ. No. 7018. Third Dist. Feb. 10, 1944.]

Estate of NELS BENSON, Deceased. MARTIN BENSON, Appellant, v. GILBERT MOODY, as Executor, etc., Respondent.

T. L. Christianson for Appellant.

W. Coburn Cook for Respondent.

THOMPSON, J.—Martin Benson, nephew of Nels Benson, deceased, has appealed from an order admitting to probate the will and alleged codicil of said deceased. The original

will was established by production of a carbon copy thereof, as a lost or destroyed will, under the provisions of section 350 of the Probate Code. The asserted codicil is a subsequent complete will, disposing of all the property of the testator without reference to the original will. Both instruments were duly executed. Both were admitted to probate. The chief issue urged by the appellant is that the record lacks evidence that the original will was ''in existence at the time of the death of the testator.''

The testator was a bachelor 80 years of age. He resided at Turlock. January 17, 1938, he executed his will which was duly attested, by the terms of which he gave all of his property to his sister Johanna Johansson in Sweden, and in the event of her death to her children share and share alike. He appointed Harry R. Anderson, a banker at Turlock, as executor. He left that will in custody of Mr. Anderson. About six months later, in company with his nephew Martin Benson, the testator called at the bank and demanded possession of the will which was then delivered to him. On July 20, 1938, he executed a codicil to his will, changing none of its terms, with the exception of appointing A. P. Ferguson as executor in the place of Harry R. Anderson. The remaining terms of the former will were expressly ratified and confirmed. He then delivered the will, together with other documents to Mr. Ferguson, who died October 29, 1939.

In the summer of 1938, on petition of Martin Benson and A. P. Ferguson, the court, under section 1460 of the Probate Code, appointed guardians of the person and estate of Nels Benson, on the ground that he was incompetent and unable to properly manage his property. December 27, 1940, Nels Benson duly executed another will or codicil, which was admitted to probate with the original will. It was drawn by an attorney and was formally executed and attested by three witnesses. It is in the following language:

''I, N. Benson, also known as Nels Benson, and also known as Nils Benson, make this codicil to my will dated on or about January 17, 1938, revoking the codicil in which A. P. Ferguson was appointed executor, as follows:

''I give all of my estate, share and share alike, to Hartha, Tage, Edith, and Erik who are the living children of my deceased sister Johanna Johansson who lived at Finja, Sweden, to Nils Linderoth, Finja, Sweden, and Jennie Benson, (di-

vorced wife of Martin Benson), who lives at Oakland, California. I give nothing to my nephew Martin Benson.

"I appoint Gilbert Moody, of Turlock, California, to take care of my estate, as executor of said will and this codicil, and if he is unable to act, then I appoint W. Coburn Cook, also of Turlock.

"Dated, Turlock, California, December 27, 1940.

N. BENSON."

(Attested by three witnesses.)

Nels Benson died March 12, 1942. Gilbert Moody, the executor named in the foregoing quoted instrument, petitioned the court to probate the original will dated January 17, 1938, as a lost or destroyed instrument under section 350 of the Probate Code, and also petitioned to probate the said will or codicil dated December 27, 1940. At the same time Harry R. Anderson, named as executor in the original will, filed his petition to probate that instrument. Martin Benson, nephew of said testator, who was given nothing by the terms of either instrument, filed a contest to both of said wills on the grounds of unsound mind and undue influence, and denied that said original will had been either lost or destroyed. Both petitions were heard together. The court adopted findings favorable to the proponent, Gilbert Moody, determining that both wills were duly executed; that the testator was of sound and disposing mind and free from undue influence at the times of executing both instruments, and that the former will had been lost or destroyed. Both wills were admitted to probate and Gilbert Moody was appointed executor.

Neither unsound mind nor undue influence nor due execution of the wills was an issue at the trial. The foregoing issues were waived and abandoned at the trial by the attorney for the contestant. He stated, in effect, that the only issue to be determined was whether the original will dated January 17, 1938, was in existence at the time of the death of the testator, as required by section 350 of the Probate Code. The case was tried on that theory. The attorney said: "The sole issue . . . is whether or not there was any will at all. In other words, it is revoked." Again he stated "We are making no objection as to the mental capacity [of the testator] at the time he made either one of the two [instruments]. THE COURT: At the time he made the will or either of the codicils? A. That is right."

870

Moreover, in establishing the validity of the instrument dated December 27, 1940, the proponent offered substantial evidence that Nels Benson possessed testamentary capacity. Fred Carson, one of the witnesses to that instrument, after testifying to intelligent answers of the testator regarding that will and his desire to execute it, definitely stated that he was "of sound mind" and not "acting under menace, duress or fraud." Mr. W. C. Cook, the attorney who drew the instrument last mentioned, and who also signed it as a witness, testified that the testator whom he had known for fourteen years intelligently answered all questions regarding his heirs, the property he was disposing of by will, his knowledge of the nature of that instrument and his desire to have the witnesses attest the will. He said that the testator was emphatic in declaring that he did not wish to leave his nephew Martin Benson "anything." Mr. Cook also stated "I believed him to be of sound mind." Dr. M. C. Collins, who also signed that instrument as a witness, and who had known the testator for some time, definitely stated in response to the question, "At that time was the testator of sound and disposing mind?" that "He was."

■ Independently of the abandonment of the issues of unsound mind and undue influence, the findings of the court in that regard are adequately supported by the evidence.

■ It is true that the proponent of a will who seeks to establish it as a valid lost or destroyed instrument must prove that "it was in existence at the time of the death of the testator." (Sec. 350, Prob. Code; *Estate of Flood,* 47 Cal.App. 2d 809 [119 P.2d 168]; *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].) It is however not necessary in the present proceeding to determine whether the original will was known to be last in the possession of the testator, or whether the evidence supports the validity of that will as a lost or destroyed instrument, for the reason that it was superseded by the subsequent will dated December 27, 1940, which is in every respect a duly executed, valid will disposing of all of the property belonging to the testator. (*Estate of Shute,* 55 Cal.App. 2d 573 [131 P.2d 54].) It therefore becomes immaterial whether the original will was affirmatively revoked. It was nevertheless void.

■ A subsequent valid will is deemed to revoke a former will by implication when its provisions are *wholly* inconsistent

with the terms of the prior will. (Sec. 72, Prob. Code; *Estate of Rose,* 95 Cal.App.580 [273 P. 92] ; *Estate of Martin,* 31 Cal.App.2d 501 [88 P.2d 234] ; 123 A.L.R. 1397, note; 68 C.J. 804, sec. 494.) Some California cases hold that a subsequent will which disposes of all of the property of a testator has the effect of revoking a former will, regardless of whether its provisions are *wholly* inconsistent with the terms of the prior will. (*Estate of Mallon,* 28 Cal.App.2d 106 [81 P.2d 992].) In the present case we consider the provisions of the subsequent will "wholly inconsistent" with the former will. The former will gave all of the testator's property to his sister Johanna Johansson, and in the event of her death to her children, share and share alike, without giving the names or the number of said children. It designated Harry R. Anderson as executor. The last will recognized the death of the testator's said sister, and gave all of his property to her four named living children, and to two other named individuals, share and share alike. It nominated Gilbert Moody as executor. ■ Regardless of whether the subsequent will is *wholly* inconsistent with the terms of the former will, it constitutes a complete, valid new will of all the testator's property and not a mere modification thereof, and it therefore supersedes the first will and is controlling over it in the disposition of his estate. (*Estate of Shute, supra.*) It is immaterial that the last instrument contains the statement that "I . . . make this *codicil* to my will dated on or about January 17, 1938." The last instrument is in fact a complete new will which disposes of the entire estate of the testator. ■ A duly executed subsequent instrument which in clear and unambiguous language disposes of all of the property in a manner wholly inconsistent with the provisions of the former will clearly leaves no portion of the original will operative for any purpose. Under such circumstances the subsequent instrument supersedes the former will and constitutes a new will which cannot be aided in any respect by reference to the former one. ■ A codicil does not supersede a former will. Its function is merely to add to, supplement, qualify, modify or alter a former will in some stated respects. It contemplates that the former will still exists and that reference to it is necessary for a complete disposal of the testator's estate. (7 W.&Ph. 536.) In the

Rose case, *supra,* citing with approval *Estate of Iburg,* 196 Cal. 333, 337 [238 P. 74], it is said, at page 584:

"a man cannot have two independent wills at the same time, each acting upon the same subject matter and each professing to make a distinct and full disposition thereof."

In the Shute case, *supra,* the court points out the fact that a subsequent will which disposes of all the estate of a testator in exactly the same language used in a former will would supersede the original instrument and be entitled to probate as the *"last* will" of the testator, even though it did not constitute a technical revocation of the former will under the provisions of section 72 of the Probate Code, because it is not inconsistent therewith. But the court further says that regardless of whether the first will be deemed to have been constructively revoked, because the last instrument disposes of all of the estate of the testator, the subsequent will, under such circumstances "would usually be given effect not because it made a complete disposition of the property, but because it was the *last* will." The court concludes by saying:

"A valid second will making a complete disposition of the property and which is offered for probate usually supersedes a prior will, and this whether or not its terms are inconsistent with those of the prior will in whole or in part."

It follows that the will of Nels Benson, dated December 27, 1940, was properly admitted to probate as the last will of said deceased. The former will was thereby rendered *functus officio* and void. Its utility was canceled.

The judgment is modified by striking out that portion which admits the former will dated January 17, 1938. As so modified the judgment is affirmed. Respondent may recover his costs on appeal.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 10, 1944.