[Civ. No. 25108. Second Dist., Div. One. June 9, 1961.]

Estate of LOUIS G. ROBINSON, Deceased. JOHN W. ROBINSON et al., Appellants, v. GEORGIE JEAN ANDREW, et al., Respondents.

Guerin & Guerin and John J. Guerin for Appellants.

Charles H. Matthews and Theodore Robinson for Respondents.

LILLIE, J.—Louis G. Robinson died in Los Angeles on June 13, 1959. He was survived by certain blood relatives, namely, a son John W. Robinson (one of the appellants), a granddaughter Georgie Jean Andrew (the daughter of John), three brothers and one sister. On June 16, appellant Emma May Robinson, decedent's sister-in-law by a predeceased brother (Robert), filed a petition for probate of a lost or destroyed will alleged to have been executed in May of 1957; on June 19, Georgie Jean Andrew filed for probate a will of decedent dated May 6, 1959. Both petitions having been set for hearing on July 1, 1959, on that day a contest to the 1959 will was filed by Emma May on the grounds of testamentary incapacity, undue influence and lack of due execution. On December 16, 1959, issues to the contest having finally been joined, all proceedings pertaining to the estate were transferred from the master calendar department to a trial department as a "jury" matter; thereafter, further proceedings were continued to March 21, 1960, in the same trial department (Department 64).

Meantime, on January 25, 1960, Georgie Jean and the remaining blood relatives (respondents herein) respectively moved the court in department 64 to hear and determine the question of Emma May's interest and her right to maintain the will contest—it should be observed, parenthetically, that Emma May's lack of interest was also pleaded as an affirmative defense in the respective answers to such contest; a summary judgment was also sought. On February 18, the motions were taken under submission and thereafter denied. The court in denying the motions filed the following memorandum decision: "This motion [sic] came on before the court on affidavits which the court has now read and considered. The contestant is not an heir at law and his [sic] right to contest rests on the validity of a previous lost will for which a petition to probate has been filed. The court is of the opinion that this matter can only be determined by receiving proof of the lost will and is of the opinion that in the absence of stipulation this can only be done at the time set for hearing of the contest. Both wills have been set for hearing before this court on March 21, 1960, at 10:00 A. M. The court will proceed first

to receive proof on the alleged lost will and then determine how the contest is to be heard if it is not determined by said preliminary proof."

On March 21, after receiving evidence from all parties concerned, the court found that Emma May had failed to establish that the will of 1957 was in existence at the date of decedent's death and further found, there being proof produced by respondents to that effect, that such instrument had been destroyed by the testator and was therefore revoked.[1] The court thereupon denied probate of the alleged lost will, dismissed Emma May's contest for lack of interest, admitted the 1959 will to probate and ordered counsel to prepare, serve and file appropriate findings and decree. As soon as the court's oral decision was announced, Emma May's counsel, who also represented decedent's son, John, stated that he wished to file a contest which John had previously signed and verified on February 15, 1960; although advised by the court that John's action came "too late," the contest was nevertheless filed—its allegations appear to be identical with those contained in Emma May's contest. On April 5, 1960, findings and judgment in connection with the March 21 proceedings were duly filed. On April 28, 1960, the court granted Georgie Jean's motion to strike John's contest.

Emma May on June 3, 1960, appealed from the judgment admitting the 1959 will to probate and from the order dismissing her contest; this supersedes a previous notice of appeal filed May 19, 1960, and the latter will therefore be dismissed. John filed two notices of appeal: the first, from the order granting the motion to strike his contest; the second, from the judgment admitting the 1959 will to probate.

We first dispose of Emma May's appeal. Not being an heir at law, she would be a "person interested" in the preprobate contest (Prob. Code, § 370) solely by virtue of her status as a legatee under the 1957 will and therefore one who might be pecuniarily benefited by setting aside the 1959 instrument. (*Estate of Harootenian,* 38 Cal.2d 242, 248 [238 P.2d 992]; *Estate of Plaut,* 27 Cal.2d 424, 425-426 [164 P.2d 765, 162 A.L.R. 837].) She now contends that the trial court at its March 21 session erroneously permitted a counter-

---

[1] At the outset of the March 21 session, for reasons not reflected by the record, a jury was not impaneled pursuant to the rule of procedure declared in *Swift* v. *Superior Court,* 39 Cal.2d 358, 364 [247 P.2d 6]; however, counsel for Emma May seems to have acquiesced in the procedure thus adopted.

showing by respondents on the merits of the preliminary issue there presented, namely, that the 1957 will was fraudulently destroyed during the decedent's lifetime without his knowledge; she argues that it was only necessary for her to make a prima facie showing, that this was done, and that the reception of respondents' rebutting evidence resulted in an adverse ruling which denied her a jury trial on the questions raised by her contest.

It is true that upon the convening of the March 21 session "the main thing to be adjudicated [was] the validity of the [1959] subsequent will, . . . and not the absolute validity of the [1957] prior will" (*Estate of Langley,* 140 Cal. 126, 131 [73 P. 824]); ▮ it is also true that a beneficiary under an earlier will may contest a later will without obtaining probate of the former. (*Estate of Plaut, supra,* 27 Cal.2d 424, 428.) But where, as here, the interest of the beneficiary under the earlier will is expressly challenged, the court may nevertheless require such person to establish her interest before proceeding to the trial of the contest she has initiated. (*Estate of Land,* 166 Cal. 538, 540 [137 P. 246]; *Estate of Wickersham,* 153 Cal. 603, 612 [96 P. 311]; *Estate of Edelman,* 148 Cal. 233, 236 [82 P. 962, 113 Am.St.Rep. 231].) The foregoing principle is conceded by Emma May who likewise concedes that she is not entitled to a jury determination of the question (*Estate of Land, supra*); she argues, however, that if the required pretrial determination of interest was not accomplished by the denial of respondents' motion for summary judgment one month prior to the March 21 session, a sufficient showing was made at the latter hearing with respect to the fraudulent destruction of the 1957 will so that it may not be said that her interest " 'has not even the appearance of validity or substance' [citation]." (*Estate of Plaut, supra,* 27 Cal.2d 424, 428.)

▮ "In the instant case, the prima facie showing must include evidence that there was a will (with proof of its contents by at least two credible witnesses) which was fraudulently destroyed prior to the testator's death and without his knowledge. (Prob. Code, § 350.)" (*Swift* v. *Superior Court,* 39 Cal.2d 358, 365 [247 P.2d 6].) There is no question that the will was duly executed in the office of Emma May's present attorneys, both of whom testified to such fact; a carbon copy of the instrument was also introduced as an exhibit. For determination, therefore, is the sufficiency of the showing that the document was "fraudulently destroyed prior to the tes-

tator's death and without his knowledge." (*Swift* v. *Superior Court, supra.*) Called as a witness by Emma May under Code of Civil Procedure, section 2055, Octavene Nelson, decedent's housekeeper, testified that she saw the decedent burn the 1957 document; in addition to this testimony, respondents point out that the will was in decedent's possession before his death, that he retained testamentary capacity until his demise and that thereafter the document could not be found despite a search of his effects; accordingly, respondents argue, the document must be presumed to have been destroyed with intent to revoke. (*Estate of Ross*, 199 Cal. 641, 646 [250 P. 676]; *Estate of Flood*, 47 Cal.App.2d 809, 812 [119 P.2d 168].) Appellant, on the other hand, maintains that the presumption of destruction *animo revocandi* may be overcome by proof that the will was not under the decedent's exclusive control (*Estate of Arbuckle*, 98 Cal.App.2d 562, 566 [220 P.2d 950, 23 A.L.R.2d 372]), particularly where the testator has indicated a *belief* in its existence shortly before his death. (*Estate of Bristol*, 23 Cal.2d 221, 224 [143 P.2d 689].) Supportive of appellant's position, it appears that Octavene Nelson had access to the will, as did Georgie Jean who assembled decedent's personal papers when he was moved to her home six weeks prior to his death—Octavene, incidentally, benefits by the later will and not at all by the earlier document, while Georgie Jean benefits substantially more under the will offered by her for probate; it further appears that one month before his death decedent told Emma May that he had provided for her.

Were we reviewing a favorable judgment on the merits of appellant's contest, her present contentions would be more persuasive; instead, we are here concerned with a partial trial to determine the question of appellant's interest to proceed further with her opposition to the probate of the 1959 document. It may well be that an adverse decision would not have been forthcoming if the court had excluded respondents' rebutting evidence; in permitting such proof, however, the trial court followed precisely the same procedure taken in the cases of *Land, Wickersham* and *Edelman,* all of which are cited with approval in *Estate of Plaut, supra,* 27 Cal.2d 424, 426. For example, in *Estate of Wickersham*, 153 Cal. 603 [96 P. 311], the proponents of the will in suit challenged the interest of contestant Frank P. Wickersham because of the fact that prior to the death of the testatrix (his mother) he had executed a contract relinquishing, for adequate consideration,

any right, title or interest as her heir or otherwise; proof of the adequacy of the consideration was received and Frank's contest was dismissed; after the trial of such preliminary issue, it was sought (as here) to secure a jury trial of the issues raised by the contest, and the motion was held to have been properly denied. True, *Wickersham* and the other cases just mentioned did not involve a proceeding to establish a lost or destroyed will; however, in *Estate of Rodda,* 152 Cal.App.2d 300 [313 P.2d 582], the court was concerned with the same problem as that at bar and cited *Estate of Land,* 166 Cal. 538 [137 P. 246], for the proposition that a dismissal may be ordered in the absence of a sufficient showing that the contestant is an interested person. "In such a case the func-´ tion of a reviewing court is to determine whether there is in the [record] evidence sufficient to support the trial court's finding that the contestant is not a person interested." *(Estate of Rodda, supra,* p. 302.) Here, of course, there is not only the presumption of revocation, previously mentioned, but there is also direct testimony by the decedent's housekeeper that she saw him burn the instrument; while this witness undoubtedly stood to benefit by such favorable testimony, it was for the trial court to determine her credibility. The fact that a motion for summary judgment had previously been denied is of no consequence; "Where the issues have been tried, after denial of a motion for summary judgment, no importance attaches to the court's ruling on the motion." (28 Cal.Jur.2d, Judgments, § 42.)

 It not having been established by Emma May that the 1957 will was fraudulently destroyed or in existence at decedent's death, the trial court properly dismissed her contest; her appeal from the order admitting the 1959 will to probate falls with the appeal from the judgment dismissing her contest. *(Estate of Rodda, supra,* p. 303.)

Coming now to John's appeal, it is first contended that the trial court erred in admitting the 1959 will to probate on an affidavit of a subscribing witness (Prob. Code, § 329) after it had been announced in open court that his contest was going to be filed. Section 370 of the Probate Code provides that any person interested may institute a contest "before the hearing of the petition for probate"; John's written grounds of opposition were not filed until *after* the hearing on the petition for probate and the verbal announcement by his counsel that "I have a contest of will for the heir to file who has a definite interest." "The right to contest a will is

created by statute and a contestant has such rights, and only such rights, as the statutes give him." (*Estate of Walters,* 89 Cal.App.2d 797, 799 [202 P.2d 89].)

[9] The facts show that the 1959 will was filed on June 18, 1959, and notice of hearing (listing John as an heir and legatee) published and mailed; that Emma May's contest was filed on July 1, 1959, and the required citation served on this appellant; that John was present in court on February 18, 1960, for the hearing on respondents' motion for summary judgment; that three days prior to the February 18 hearing this appellant signed and verified his contest, although he thereafter elected not to file such written opposition *before* the March 21 hearing on the petition for probate of the 1959 will. Having had actual knowledge of Emma May's contest, his sole remedy was to have joined therein; instead, he preferred to be dilatory, obviously waiting to see what would happen and then filing his "pre-probate" contest at the time when it was done. These tactics are not to be commended and are not supported by pertinent decisional law. Thus, in *Patterson* v. *Superior Court,* 137 Cal.App. 163 [30 P.2d 68], a period of two weeks was consumed in the introduction of contestants' evidence; on motion of the proponents of the will in suit, the court granted an order of nonsuit; five days thereafter a second contest was filed by another contestant, and two days after the filing of the second contest (and while it was still pending and undetermined) the trial court made an order admitting the will to probate. Subsequently this court, by writ of prohibition, ordered that the trial court be restrained from assuming jurisdiction of the second contest; such contest was not, we held, filed before the "hearing" of the petition for probate as prescribed by section 370 of the Probate Code.

The holding in *Patterson* also disposes of the claim that John's contest was filed before the actual entry of the order admitting the later will to probate. Within contemplation of section 370 of the Probate Code, however, the "hearing" had been concluded. As stated in *Patterson,* "the evidence had been fully presented; the arguments of the respective counsel had been presented; no briefs were to be filed; the actual trial had been completed; by express order of court the contestants had been nonsuited; the respective parties to the litigation had departed from the courtroom" (p. 165).

Finally it is suggested that John was denied his day in court because of the failure to honor rule 114 of the Los Angeles County Probate Court Policy Memoranda. Rule 114

provides as follows: "When a petition for probate of will is called for hearing, if an attorney appears and orally objects, and declares that his clients desire to file a written contest, the court will continue the hearing with the understanding that if a contest is not actually on file at the new hearing date, the hearing will nevertheless proceed." We believe that the underlying reason for the above rule is to discourage the filing of hasty and poorly prepared contests on the day set for the probate of the will; here, of course, the hearing had originally been set for July 1, 1959, and appellant waited more than nine months before his written opposition was filed. Interestingly enough, prior to 1929 any person interested was entitled to institute a postprobate contest; in that year the Legislature, by qualifying provisions to section 380 of the Probate Code, excluded from the right of postprobate contest any persons who had knowledge of a preprobate contest in time to have joined therein. As pointed out in the *Estate of Meyer*, 116 Cal.App.2d 498, 500-501 [251 P.2d 430], the purpose of the 1929 amendment was to discourage the practice, theretofore prevalent, of persons deliberately failing to join in a preprobate contest until such contest had been determined— benefiting equally with the contestants if the will was denied probate and reserving to themselves a second chance to invalidate the will by a postprobate contest. This is exactly what John appears to have done in the present litigation; such course of conduct cannot be sanctioned.

For reasons stated, the judgment and order in each matter are affirmed.

Wood, P. J., and Fourt, J., concurred.

Petitions for a rehearing were denied July 6, 1961, and appellants' petitions for a hearing by the Supreme Court were denied August 2, 1961. Dooling, J., did not participate therein.